FILED

**IN THE UNITED STATES DISTRICT COURT** 2005 SEP 30  PM 3: 06
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

Case No.: _6:05-cv-1461-Orl-22KRS_

CSTV ONLINE, INC

                    Plaintiff,

vs.

XOS TECHNOLOGIES, INC., AND                    **JURY TRIAL DEMANDED**
MARK JOHNSON,

                    Defendants.

_____/

**COMPLAINT FOR VIOLATION OF 18 U.S.C. SECTION 1030,**
**FRAUD AND RELATED ACTIVITY IN CONNECTION WITH COMPUTERS;**
**TORTIOUS INTEREREFERENCE WITH CONTRACTUAL RELATIONS;**
**MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION**
**UNDER FLORIDA LAW, MISAPPROPRIATION OF TRADE SECRETS AND**
**CONFIDENTIAL INFORMATION UNDER NEW YORK COMMON LAW; BREACH OF**
**FIDUCIARY DUTY; CONSPIRACY TO BREACH FIDUCIARY DUTY;**
**AND UNFAIR COMPETITION**

1.      Plaintiff CSTV Online, Inc. ("CSTVO") brings this action against Defendants XOS

Technologies, Inc. ("XOS") and Mark Johnson ("Johnson") (collectively "Defendants") for

injunctive relief and damages arising out of the Defendants' misappropriation of trade secrets and

confidential information in violation of 18 U.S.C. Section 1030 (computer fraud); New York

common law and the Florida Uniform Trade Secrets Act, Fla. Sta. ch. 688.001 et seq., Johnson's

breach of his contractual obligations and fiduciary duties to CSTVO, XOS's tortious interference

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

with CSTVO's contractual relations, the Defendants' conspiracy to breach Johnson's fiduciary duty, and Defendants' unfair competition.

2.     In its essence, this case arises from Johnson copying CSTVO's most important trade secrets and confidential information for the economic benefit of his new employer, XOS.

## PARTIES

3.     This is an action for damages and for injunctive relief to prevent XOS and Johnson from, among other things, (i) using trade secrets and confidential information misappropriated from CSTVO in Johnson's final hours of employment, and (ii) enjoining Johnson from commencing employment in a position with any competitor of CSTVO, including, without limitation, with XOS, that requires the performance of duties substantially similar to those required in the performance of his former position as Vice President, University Relations, for CSTVO, for a period of one year .

4.     Plaintiff CSTVO is a Delaware corporation with a principal place of business at 85 10th Avenue, New York, New York 10011.

5.     CSTVO's parent corporation, CSTV Networks, Inc. ("CSTV"), is a multi-media company that created the first 24-hour college sports television network, *CSTV: College Sports Television.*

6.     Through its numerous platforms, CSTV provides live college sports games, events, news, information, analysis and broadband content, and reaches innumerable college sports fans throughout the world.

7.     The Plaintiff, CSTVO, provides services in the college sports arena that complement the television network of its parent.  Specifically, CSTVO is the leading online service provider to

SSL-MIA1 30132040v8

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

the athletic departments of colleges and universities, college conferences, coaches associations and similar organizations.

8.      Through individual contracts negotiated with approximately 230 clients, CSTVO provides a variety of services to clients who wish to create a user-friendly, attractive and efficient website, which may also serve as a source of much-needed revenue for colleges and universities throughout the United States.

9.      At its most basic level, CSTVO licenses software, and the necessary periodic updates, to permit a university's athletic department to create a template for its website; this website may then be operated by the university's sports information department, which will insert and update its own content (e.g., team news and photos, streaming of footage and/or audio, ticketing information) as it sees fit.  CSTVO also provides technical support for its licensees.

10.     CSTVO also offers a variety of services to its clients, including the sale and placement of advertising on such sites; a real-time sporting event reporting service ("gametracker"), which permits a user to follow the action of any game as it occurs; ticketing and merchandising services; fan, donor and alumni management; and the creation and distribution of subscription packages for the streaming of audio and audiovisual telecasts of college sporting events, which packages may be school-specific, conference-wide or in a variety of other configurations.  Revenue shares from each of these activities are paid by CSTVO to the universities and other client participating in such programs.  Plaintiff CSTVO comprises a substantial part of the assets, revenue and operations of its parent, CSTV.

11.     Defendant XOS Technologies, Inc. is a Delaware corporation registered to do business in Florida and residing in this district.

SSL-MIA1 30132040v8

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

12.     XOS is CSTVO's fiercest competitor in its principal business segment, namely, to serve as online service provider for university athletic department websites.

13.     XOS competes directly with CSTVO to provide online services to the athletic departments of colleges and universities, college conferences, coaches associations and similar organizations; to provide revenue-generating webcasts; and to create and host public and premium subscriptions for internet webcasts.

14.     XOS describes itself on its website as follows: "XOS Network is the only full-service on-line fan management platform for sports and entertainment properties. . . . [offering] an official website, premium content, streaming video, email marketing, merchandise & auctions, and ticketing & donor management."

15.     XOS claims to have contracts with "over 600 collegiate & professional sports teams & leagues…." See Excerpts of XOS website, attached hereto as Exhibit 1.

16.     Thus, like CSTVO, XOS negotiates individual contracts to provide website services to colleges and universities throughout the United States.

17.     The software licensed by XOS to a university for the purpose of creation and management of its athletic department website may be operated by the university, which may insert and update its own content as it sees fit.

18.     Also like CSTVO, XOS provides ticketing and merchandising services and the creation of subscription packages for the streaming of audio and audiovisual telecasts of college sporting events.

19.     On information and belief, as with CSTVO, revenue shares from each of these activities are paid by XOS to the schools and other clients that participate in such programs.

4

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

20.     Defendant Johnson is an individual with a last known address is 925 Canterbury Road, Apt. 824, Atlanta, Georgia.

## JURISDICTION AND VENUE

21.     This Court has jurisdiction of this matter under 28 U.S.C. Section 1331 because the matter arises under the laws of the United States.  This Court has supplemental jurisdiction over the State law claims under 28 U.S.C. Section 1367.

22.     XOS is subject to personal jurisdiction in the State of Florida because it is conducting a business in this state and committed a tortious act within this state.  Moreover, XOS is engaged in substantial and not isolated activity within this state.

23.     Johnson is subject to personal jurisdiction in the State of Florida because he breached the Confidentiality, Non-Solicitation and Assignment of Inventions Agreement (the "Agreement") by failing to perform acts required by this contract to be performed in this state.  A copy of the Agreement is attached hereto as Exhibit 2.  Moreover, Johnson is engaged in substantial and not isolated activity within this state.

24.     Venue is proper under 28 U.S.C. Section 1391(b)(3) because Defendant XOS is found in this judicial district and there is no district in which the action may otherwise be brought.

## FACTUAL ALLEGATIONS

25.     CSTVO is a leading company in the business of providing services and software to the athletic departments of colleges and universities, college conferences, coaches associations and similar organizations to permit the creation and operation of athletic department websites, internet-based broadcast of college sporting events, and related merchandising and advertising.  A sampling of CSTVO's products and services can be found on the websites of its numerous clients.

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

26.    CSTVO has developed several significant client relationships in the State of Florida, including the University of Miami, Florida State University, the University of Central Florida and University of South Florida, and has undertaken marketing efforts to further develop its client base. Because of those client relationships and CSTVO's marketing efforts, Johnson has established significant contacts with Florida in connection with his former employment at CSTVO.

27.    CSTVO expends considerable time and effort in targeting specific universities as customers and employing confidential sales and marketing strategies to (a) tailor its products and its pricing to customer demands and requirements, (b) differentiate its products and marketing against the marketing of its competitors, and (c) win customer accounts in competitive sales processes.

28.    CSTVO's ability to realize a return on its investment depends upon its ability to protect its trade secrets and proprietary and confidential information and to prevent competitors from unfairly benefiting from CSTVO's enormous investment in sales and marketing strategies and people.  Accordingly, CSTVO has taken reasonable steps to protect the secrecy of its trade secrets and confidential information.

29.    CSTVO (a) limits the availability of trade secrets and confidential information to those employees who have a need to know the information; (b) maintains controls on the disclosure of information, whether marked confidential or not, to persons outside CSTVO; (c) requires any person, including clients and prospective clients, to whom voluntary disclosure of trade secrets or confidential information is made to sign a confidentiality agreement and (d) routinely reminds employees of the importance of maintaining secrecy and confidentiality, including in its Employee Handbook, a copy of which Johnson acknowledged receiving, in writing.  True and correct copies of

6

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

the Confidentiality Policy contained in the Employee Handbook and Johnson's acknowledgment are attached hereto as Exhibit 3.

30.     Since the marketing and pricing underlying CSTVO's products and its sales and marketing strategies are trade secrets and highly confidential, CSTVO requires every employee to sign a confidentiality agreement such as the Agreement that Johnson signed on March 5, 2004.  See Exhibit 2.

31.     In paragraph 4, with respect to Confidential Information, the Agreement provides that:

**4.      Confidential Information**

**(a) Company Information.  I agree at all times during the term of my Relationship with the Company and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm, corporation or other entity without written authorization of the Board of Directors or Chief Executive Officer of the Company, any Confidential Information of the Company.  I further agree not to make copies of such Confidential Information except as authorized by the Company.  I understand that "Confidential Information" means any Company proprietary information (i.e., information not generally known by the public), technical data, trade secrets or know-how, including, but not limited to, contract terms, research, product plans, products, services, suppliers, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the Relationship), prices and costs, markets, software, developments, inventions, technology, designs, drawings, engineering, hardware configuration information, finances, budgets or other business information disclosed to me by or in connection with the Company or its operations or the operations or business of its predecessor-in-interest, Student Advantage, Inc. (the "Predecessor"), either directly or indirectly, in writing or orally, during the period of the Relationship and/or prior to the period of the Relationship while employed or engaged by the Predecessor, whether or not during working hours.  I further understand that Confidential Information does not include any of the foregoing items which has become publicly and widely known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.**

32.     In paragraph 8, with respect to non-solicitation, the Agreement provides:

7

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

**(b)   8.   Solicitation of Employees, Consultants and Other Parties. I agree that during the terms of my Relationship with the Company, and for a period of twenty-four (24) months thereafter, regardless of the reason for termination of the Relationship, I shall not either directly or indirectly hire, solicit, induce, recruit or encourage any of the Company's employees or consultants to terminate their relationship with the Company, either for myself or for any other person or entity. Further, for a period of 24 months following termination of my Relationship with the Company for any reason, with or without cause, I shall not solicit any licensor to or customer of the Company or licensee of the Company's products, in each case, that are known to me, with respect to any business, products or services that are competitive to the products or services offered by the Company or any of its affiliated entities, including but not limited to any company controlled by, controlling or under common control with Company ("Affiliates"), or under development as of the date of termination of my Relationship with the Company or its Affiliates. (Emphasis added.)**

33.   The Agreement is governed by New York law, which does not contravene a strong Florida public policy and should therefore be enforced in this proceeding.

34.   Johnson was hired in September 1997 by CSTVO's predecessor-in-interest as its Vice President, University Relations, a position he held until September 8, 2005.

35.   When CSTV acquired the assets that comprised the business of CSTVO in March 2004, Johnson executed the Agreement.

36.   As Vice President, University Relations, Johnson was a senior executive at CSTVO. Johnson was instrumental in the marketing to and negotiation of contracts between CSTVO and its potential and actual customers that contained proprietary information and trade secrets. When CSTV acquired the business of CSTVO, the Company had approximately 130 schools under contract. Johnson's strategic initiatives and relationships that he formed with the universities while employed by CSTVO were integral to the addition by the Company of almost 100 schools to its customer lists since CSTVO's acquisition.

8

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

37.     Johnson is well aware that the pricing of CSTVO's services to its customers and its strategies for approaching new schools is confidential information and includes CSTVO trade secrets. Johnson was responsible for the creation of significant portions of CSTVO's business plans, including identifying schools to target as new customers.

38.     Johnson was responsible for the development and implementation of the following: (1) account management, marketing and promotional strategy for all current and prospective schools; (2) strategy for all current business development and e-commerce initiatives (including the creation of online audio and audiovisual subscription packages of college sports events and highlights, provision of online school website services, auction, ticketing, merchandising, etc.); (3) integration of the fan base of all CSTVO network partners; (4) public relations support for customers; and (5) accounting/finance for quarterly reporting, accounts receivable collection, and department budgeting and revenue goals.

39.     According to XOS's job description and duties as set forth in a document recovered from Johnson's CSTVO company-issued laptop after his departure from CSTVO, his responsibilities at XOS will be the same as his responsibilities were at CSTVO. Specifically, he will:

- Oversee and manage the Network teams that implement, execute service, build relationships with, and up-sell to clients. This is exclusive of traditional sales and consumer marketing.
- Sell to Athletic Directors at existing clients to continue to scale the existing offerings of XOS Technologies along with prioritizing the best of new offerings.
- Manage the leader of the field-based customer relationship team; the Director of Customer Relations.
- Manage the leader of the implementation and development team; the Director of IT.
- Manage the leader of the support service/call center; the Call Center Manager.
- Assist our Business Development Team in acquiring content for our client sites and collegesportsdirect.tv through the solicitation of, presentation to, and negotiation with key client Athletic Directors.

9

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

- Work with Athletic Directors to develop creative strategies and methodologies for media rights and licensing to add new or enhance existing revenue streams.
- Manage the day-to-day operations of this leadership position including proposal and contract templates, execution of contracts; editing and maintenance of existing commissions plans for CRM staff; direct design and management of Client relations teams; leadership and assistance in development of inside sales collateral and tools; leadership and responsibility for on-going training; coordination of internal communications through regular and consistent team meetings, reporting, and accountability.
- As Network Management Team member assist the group in directing certain strategies, initiatives, and tactics associated with growth and achieving strategic goals.
-

40.     During the week of September 1, 2005, Johnson had indicated to CSTVO that he was resigning from the Company; however, he did not disclose that he was going to XOS. Johnson merely gave two weeks notice.

41.     However, on September 8, 2005, CSTVO confirmed definitively that Johnson was leaving CSTVO to join XOS. CSTVO determined that it was best that Johnson leave the company premises promptly.

42.     As a result, CSTVO attempted to make arrangements with building security to escort Johnson from the premises; when the building responded that there was no one available to do so, CSTVO made such arrangements with a private security firm.

43.     Nonetheless, without CSTVO's knowledge, mid-day on September 8, 2005, building management inadvertently informed a former CSTVO employee, Russell Wright, that the building security personnel had been asked to escort an employee from the premises that afternoon.

44.     Wright immediately telephoned Johnson on Johnson's cell phone and alerted him to this fact.

SSL-MIA1 30132040v8

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

45.    Johnson determined that it was likely that he was the employee who would be asked to leave the premises.

46.    At the time of the call, Johnson was at lunch with the other CSTVO employees in the Atlanta office and he told them of Wright's call.  Two more significant events occurred between Johnson's call from Wright at lunch and his departure from the building at 400 p.m.

47.    On September 8, 2005, between 2:14 p.m. and 2:58 p.m., CSTVO's General Counsel called Johnson to speak with him about the sensitivity of the CSTVO information in light of the almost identical position he would be assuming at XOS and XOS's competitive relationship with CSTVO.

48.    In the course of this conversation, the General Counsel acknowledged that she knew that Johnson was going to XOS, which he did not deny, and Johnson acknowledged that he was bound by the Agreement prohibiting the disclosure and use of CSTVO's Confidential Information and trade secrets and the non-solicitation provision, prohibiting him from soliciting CSTVO customers for 24 months after his departure from CSTVO.

49.    Mere minutes after ending the call with CSTVO's General Counsel, without CSTVO's knowledge or consent, from 2:58 p.m. to 3:34 p.m., Johnson began accessing hundreds of CSTVO's most sensitive files, including confidential information and trade secrets, and at the same time burning CDs.

50.    The files Johnson accessed while he was burning CDs included, for example: CSTVO revenue reports, contact information, lists of company advertisers, reports of revenue broken down by school, product category and advertiser, marketing plans, resumes of current CSTVO employees, and updates of potential clients.

SSL-MIA1 30132040v8

51.     At 4:00 p.m. on September 8, 2005, at CSTVO's request, Johnson surrendered his keys to security and was escorted from the premises.

52.     CSTVO did not learn of Johnson's theft of CSTVO's Confidential Information and trade secrets until after it retained the services of Vincent J. Rakoczy of High Technology Investigations, who performed a forensic analysis of Johnson's laptop hard drive.

53.     Mr. Rakoczy determined that on September 8, 2005, from 2:58 p.m. to 3:34 p.m., Johnson accessed the information seminal to CSTVO's business operations, including hundreds of files, including but not limited to CSTVO's customer lists; marketing and business development reports; revenue reports; university contact information; lists of company advertisers; reports of revenue broken down by school and product category; marketing plans; resumes of current CSTVO employees; and updates on potential clients.  Mr. Rakoczy also determined that Johnson deleted CSTVO files as well.

54.     On September 8, 2005, after Johnson was made aware that he would be asked to leave that day, Johnson was observed cleaning out his office and working on his laptop computer.  It is now clear that Johnson in fact cleaned out not only his office but also the Company's files, taking with him every conceivably valuable piece of competitive information that XOS needs to undermine CSTVO in the marketplace, doing irreparable damage to CSTVO.

55.     Johnson, as a high level executive, had access to and created significant amounts of CSTVO confidential information.

56.     His former position at CSTVO and prospective employment at XOS are so similar that the knowledge gained in the previous position, as well as the actual confidential information and trade secrets Johnson stole from CSTVO, will inevitably and unfairly benefit XOS.

12

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

57.     Johnson's former employer, CSTVO, competes with Johnson's new employer, XOS, in terms of product and geographic market.  Johnson will fill virtually the same position he held at CSTVO.

58.     Johnson's deliberate theft of CSTVO's trade secrets, including but not limited to the 2003 OAS Revenue report, warrants enjoining him to prevent the actual and inevitable use and disclosure of CSTVO's trade secrets and confidential information.

59.     On September 8, 2005, with concern over Johnson's knowledge of CSTVO confidential information and trade secrets, Barbara Shulman, Esq., CSTV's Executive Vice President and General Counsel, wrote the President of XOS, Dan Aton, informing him of XOS's and Johnson's obligations under the Agreement and CSTVO's concern over the inevitable disclosure of CSTVO's trade secrets and confidential information in light of Johnson's almost identical position at XOS.  A true and correct copy of this letter is attached hereto as Exhibit 4.

60.     At the time, Ms. Shulman was unaware of Johnson's theft of CSTVO's electronic files.  In a telephone conversation several days later, on September 12, 2005, with XOS's outside counsel, XOS acknowledged to CSTVO that XOS was aware of the Agreement; that Johnson would not use CSTVO confidential or proprietary information or trade secrets; and that Johnson would not solicit CSTVO's customers for the 24 months provided for in the Agreement.

61.     Notwithstanding the representations by Johnson and XOS's counsel that each would honor the terms of the Agreement, CSTVO undertook to verify that in fact Johnson did not take CSTVO confidential information.

62.     As discussed above, CSTVO retained Vincent J. Rakoczy of High Technology Investigations to perform a forensic analysis of Johnson's hard drive.  The results are shocking.

13

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

63.     Apparently doubting his ability to compete fairly in the marketplace, Johnson stole hundreds of CSTVO files, comprising the essence of CSTVO's business plans, financial information, strategic information, customer lists, customer pricing and similar trade secret information.  Among the confidential information that Johnson illegally downloaded and burned on one or more CD's between 2:58 and 3:34 p.m. on September 8, 2005 is, for example, the 2003 OAS Revenue spreadsheet, which reveals CSTVO's revenue broken down by customer.  This is a trade secret and is information protected by the Agreement, by New York common law, and Fl. Stats. Ann. Section 688, The Uniform Trade Secrets Act.

64.     In addition, Mr. Rakoczy found on Johnson's laptop computer at CSTVO the emails Johnson exchanged with XOS in setting up his interview and negotiating the terms of his employment at XOS, as well as Johnson's employment contract with XOS.  A true and correct copy of the Agreement dated September 2, 2005 between Mark Johnson and XOS is attached hereto as Exhibit 5.  In order to join CSTVO's top, direct competitor XOS, Johnson made improper use of his employer's time, facilities, and proprietary secrets.

65.     The proprietary and confidential information and trade secrets illegally removed from CSTVO by Johnson in his last hours of his employment at CSTVO evidence his intent to use this information at XOS to the economic benefit of XOS and to CSTVO's detriment.

66.     In joining CSTVO's direct competitor, Johnson has or will disclose CSTVO confidential information to XOS employees and interested parties as part of his new position at XOS.

67.     Johnson has acknowledged in the Agreement that injunctive relief is an appropriate remedy for the breach or threatened breach of its provisions.

14

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

## COUNT I – VIOLATION OF 18 U.S.C. SECTION 1030, FRAUD AND RELATED ACTIVITY IN CONNECTION WITH COMPUTERS
### (Against Johnson)

68.     CSTVO repeats and realleges paragraphs 1 through 67 as if they were fully set forth herein.

69.     On September 8, 2005, Johnson accessed CSTVO's computer without authorization and exceeded his authorized access and obtained CSTVO information from CSTVO's protected computer, while engaged in interstate communication, in violation of 18 U.S.C. Section 1030.

70.     On September 8, 2005, Johnson, knowingly and with intent to defraud CSTVO, accessed CSTVO's protected computer without authorization and/or exceeded his authorized access, and defrauded CSTVO by stealing CSTVO's trade secrets, which had a value in excess of $5,000, in violation of 18 U.S.C. Section 1030.

## COUNT II – TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
### (Against XOS; The Agreement)

71.     CSTVO repeats and realleges paragraphs 1 through 67 as if they were fully set forth herein.

72.     The Agreement is a valid contract between CSTVO and Johnson pursuant to which Johnson agreed, among other things, not to use or disclose CSTVO confidential information to competitors and not to solicit any existing CSTVO accounts for two years after his departure from CSTVO.

73.     XOS knew of the existence and terms of the Agreement and intentionally induced Johnson to breach it.

15

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

74.    XOS's conduct was wrongful and unjustified.

75.    CSTVO has been damaged.

## COUNT III – BREACH OF CONTRACT
## AGAINST JOHNSON

76.    CSTVO repeats and realleges paragraphs 1 through 67 as if they were fully set forth herein.

77.    Johnson executed the Agreement in which he agreed not to use or disclose confidential information and trade secrets belonging to CSTVO.

78.    As described above, Johnson has breached the Agreement when he accessed, downloaded and copied CSTVO's confidential information and trade secrets, including the 2003 OAS Revenue Report, on his last day of work at CSTVO on September 8, 2005, without the express or implied consent of CSTVO.

79.    As a result of Johnson's breach of the Agreement, CSTVO has sustained and will continue to sustain irreparable harm and has suffered and will continue to suffer damages.

80.    CSTVO has no plain and adequate remedy at law and specific performance is appropriate and necessary because CSTVO's right to protect its trade secrets and confidential information cannot be compensated in damages and will be virtually impossible to enforce or vindicate if Johnson continues to keep and inevitably use CSTVO's Confidential Information and trade secrets contained in the customer contracts and addenda.

/ / /

SSL-MIA1 30132040v8

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

## COUNT IV – MISAPPROPRIATION OF TRADE SECRETS AND CONFIDENTIAL INFORMATION UNDER FLORIDA LAW
### (Against XOS)

81. CSTVO repeats and realleges paragraphs 1 through 67 as if they were fully set forth here.

82. The actions complained of constitute misappropriation of trade secrets and confidential information pursuant to Fla. Sta. Ch. 688.011 et. Seq.

83. As Vice President, University Relations, Johnson had a confidential relationship with CSTVO.

84. CSTVO possesses trade secrets in the form of confidential business information regarding its actual and anticipated business, products, customers, and pricing and disclosed them to Johnson in the course of his employment, and subject to the Agreement.

85. As co-founder and CEO of CSTVO, At all relevant times, CSTVO took all reasonable efforts to maintain the confidentiality of its trade secrets and confidential business information.

86. Johnson willfully misappropriated CSTVO's trade secrets and confidential business information when he accessed and downloaded the confidential information as described in paragraphs 49 through 53 without the express or implied consent of CSTVO.

87. Johnson knew at the time of his misappropriation that his knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain its secrecy, such as his employment with CSTVO, and subject to the Agreement.

88. As a result of Johnson's actions, CSTVO has suffered substantial and irreparable injury and will continue to suffer substantial, immediate and irreparable injury.

17

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

89.     CSTVO has no plain and adequate remedy at law and specific performance is

appropriate and necessary because CSTVO's right to protect its trade secrets and confidential

information cannot be compensated in damages and will be virtually impossible to enforce or

vindicate if Johnson continues to keep and inevitably use CSTVO's confidential information and

trade secrets contained in the customer contracts and addenda.

### COUNT V – MISAPPROPRIATION OF TRADE SECRETS AND
### CONFIDENTIAL INFORMATION UNDER NEW YORK COMMON LAW
### (Against XOS)

90.     CSTVO repeats and realleges paragraphs 1 through 67 as if they were fully set forth

here.

91.     The actions complained of constitute misappropriation of trade secrets and

confidential information pursuant to New York common law.

92.     As Vice President, University Relations, Johnson had a confidential relationship with

CSTVO.

93.     CSTVO possesses trade secrets in the form of confidential business information

regarding its actual and anticipated business, products, customers and pricing and disclosed them to

Johnson in the course of his employment, and subject to the Agreement.

94.     At all relevant times, CSTVO took all reasonable efforts to maintain the

confidentiality of its trade secrets and confidential business information.

95.     Johnson willfully misappropriated CSTVO's trade secrets and confidential business

information when he accessed and downloaded the confidential information as described in

paragraphs 49 through 53 without the express or implied consent of CSTVO.

18

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

96.     Johnson knew at the time of his misappropriation that his knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain its secrecy, such as his employment with CSTVO, and subject to the Agreement.

97.     As a result of Johnson's actions, CSTVO has suffered substantial and irreparable injury and will continue to suffer substantial, immediate and irreparable injury.

98.     CSTVO has no plain and adequate remedy at law and specific performance is appropriate and necessary because CSTVO's right to protect its trade secrets and confidential information cannot be compensated in damages and will be virtually impossible to enforce or vindicate if Johnson continues to keep and inevitably use CSTVO's confidential information and trade secrets contained in the customer contracts and addenda.

## COUNT VI – BREACH OF FIDUCIARY DUTY
### (Against Johnson)

99.     CSTVO repeats and realleges paragraphs 1 through 67 as though fully set forth herein.

100.    As an executive and manager for CSTVO, Johnson assumed, accepted and owed a duty of loyalty to CSTVO.

101.    By employing Johnson as an executive and manager, CSTVO reposed special trust and confidence in Johnson and expected Johnson to safeguard its assets, including CSTVO's customer information and confidential, proprietary business information and trade secrets regarding its pricing.

102.    While working for CSTVO, Johnson violated his fiduciary duties to CSTVO by, among other things, conspiring with XOS to solicit CSTVO customers and to use confidential

19

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

business information regarding CSTVO's pricing for the benefit of XOS, by downloading and copying CSTVO's trade secrets and confidential information, and by using CSTVO's computers and offices to negotiate the same position at XOS that he held at CSTV.

103.    CSTVO has been damaged by Johnson's violation of his fiduciary duties.

## COUNT VII – CONSPIRACY TO BREACH FIDUCIARY DUTY
### (Against XOS and Johnson)

104.    CSTVO repeats and realleges paragraphs 1 through  74.

105.    As an executive and manager for CSTVO, Johnson assumed, accepted and owed a duty of loyalty to CSTVO.

106.    By employing Johnson as an executive and manager, CSTVO reposed special trust and confidence in Johnson and expected Johnson to safeguard its assets, including CSTVO's pricing information, customer information and confidential, proprietary business information and trade secrets.

107.    On information and belief, XOS and Johnson conspired to use Johnson's access to CSTVO pricing and confidential information to compete with CSTVO at the expense of CSTVO and in total disregard for CSTVO's rights.

108.    Specifically, on September 8, 2005, XOS and Johnson misappropriated CSTVO's trade secrets, customer pricing information and confidential and proprietary business information when Johnson spent several hours downloading and copying CSTVO's most sensitive computer files, consisting of trade secrets and confidential information.

109.    CSTVO has been damaged by XOS and Johnson's conspiracy to breach Johnson's fiduciary duties and by the misconduct that occurred pursuant to the conspiracy.

20

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

## COUNT VIII – UNFAIR COMPETITION
### (Against XOS and Johnson)

110.    CSTVO repeats and realleges paragraphs 1 through 67.

111.    Defendants are engaged in unfair competition by illegally taking and using and intending to use CSTVO's trade secrets and confidential information.  Defendants' unauthorized use of CSTVO's trade secrets and confidential information constitutes Common Law Unfair Competition.

112.    Defendants' acts of Unfair Competition to attract and secure business from CSTVO's customers using CSTVO confidential information is and would be harmful to CSTVO in that CSTVO will suffer the loss of this business for each customer who does business with Defendants as a result of Defendants' use of this illegally-obtained information.  For example, using CSTVO's trade secret in the form of the CSTVO's 2003 Revenue report broken down by customer and advertiser, XOS could target specifically only the most profitable of CSTVO's customers or its advertisers, information that XOS would not otherwise have in its possession.  Plaintiff will suffer substantial damage to its business in the form of loss of profits and loss of goodwill, all in amounts to be proven at trial if XOS and Johnson are not enjoined.

113.    Unless restrained and enjoined, Defendants' acts of Unfair Competition as alleged above will cause Plaintiff ongoing, irreparable injury.

**WHEREFORE**, CSTVO respectfully requests that the Court enter an Order:

(1) enjoining Johnson from commencing employment in a position with any competitor of CSTVO, including, without limitation, with XOS, that requires the performance of duties substantially

21

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

similar to those required in the performance of his former position as Vice President, University Relations, for CSTVO, for a period of one year;

(2) enforcing Johnson's contractual obligations not to use or disclose any confidential information belonging to CSTVO and directing Johnson to return all information misappropriated and/or disclosed to any third party, including, without limitation, XOS, in violation of such obligation, including, without limitation, all copies, whether in machine or human readable form;

(3) enforcing Johnson's contractual obligation to not solicit any client or employee of CSTVO for a period of twenty-four (24) months following his resignation from CSTVO;

(4) enjoining XOS from employing or otherwise engaging Johnson in any position that requires the performance of duties substantially similar to those required in the performance of his former position as Vice President, University Relations, for CSTVO, including, without limitation, the position of Vice President, Client Development at XOS, for a period of one year;

(5) directing XOS to return any information received from Johnson as a result of Johnson's breach of his contractual, statutory, common law and other obligations to maintain the confidentiality of CSTVO's confidential, proprietary and trade secret information, including, without limitation, all copies, whether in machine or human readable form;

(6) enjoining XOS from violating any and all statutory, common law and other prohibitions against the use and disclosure of CSTVO's confidential, proprietary and trade secret information misappropriated or otherwise wrongfully obtained;

(7) directing Johnson and XOS to destroy any and all electronic copies or versions of any CSTVO information stored on any computer hard drive in the possession, custody or control of Johnson or XOS;

SSL-MIA1 30132040v8

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM

(8)     requiring XOS and Johnson provide CSTVO's counsel and this Court with a detailed

accounting of post-September 8, 2005 use and disclosure of CSTVO trade secrets and Confidential

Information and any pre-September 8, 2005 use and disclosure of CSTVO trade secret and Confidential

Information;

(9) awarding exemplary damages;

(10) awarding attorneys' fee and costs, including expert fees; and

(11) granting such other and further relief as the Court deems necessary and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated:  September 29, 2005

STROOCK & STROOCK & LAVAN LLP
Counsel for Plaintiff
3160 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, FL 33131-5323
Telephone: (305) 358-9900
Facsimile:  (305) 789-9302

By: *Victoria E. Brieant*
Henry E. Mendia
Florida Bar No. 727415
hmendia@stroock.com
Victoria E. Brieant
Florida Bar No. 0632961
vbrieant@stroock.com

23

SSL-MIA1 30132040v8

STROOCK & STROOCK & LAVAN LLP · MIAMI · NEW YORK · LOS ANGELES
WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BLVD., SUITE 3160 MIAMI, FL 33131-5323
TEL 305.358.9900 FAX 305.789.9302 WWW.STROOCK.COM